UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DOUGLAS R. SOLTYSIAK,

       Plaintiff,

                                    File No.  2:05-CV-148

v.

                                    HON. ROBERT HOLMES BELL

UNUM PROVIDENT CORPORATION/
THE PAUL REVERE COMPANY,

       Defendant.
                                  /

**O P I N I O N**

       This action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, is before the Court on the parties' cross-motions to affirm/deny an ERISA plan administrator's denial of disability benefits.

**I.**

       Plaintiff Douglas R. Soltysiak was a doctor of internal medicine. Plaintiff was insured under a disability insurance policy issued by Defendant UNUM Provident Corporation. In June 1995 Plaintiff filed a claim for disability benefits, alleging that he was disabled from the practice of medicine since May 1995 due to a major depression that prevented him from performing the duties of his occupation as a physician. Defendant paid him disability benefits from 1995 to 2000. In 2000, Defendant required Plaintiff to undergo an independent medical examination by Dr. Shiener, a psychiatrist. As a result of that examination

Defendant determined that Plaintiff was no longer disabled and cancelled Plaintiff's disability benefits. On appeal, this Court upheld Defendant's determination that Plaintiff was no longer disabled. *Soltysiak v. UNUM Provident*, 2:01-CV-15 (W.D. Mich. Jan. 4, 2002) (Quist, J.).

Subsequently, in May 2003, Plaintiff submitted a new claim for disability benefits. He alleged that his condition has worsened since June 2002, and that he was suffering from a severe depression that totally disabled him from engaging in his occupation as a medical doctor. Plaintiff submitted updated evidence of his disability from his treating physician, Dr. Kirk Swabash. Defendant submitted Plaintiff's new medical records, along with his medical history, to Dr. Shiener, the same doctor who performed the independent medical examination in 2000. Defendant asked Dr. Shiener whether the information would change the opinion of his previous evaluations, and whether the information indicated any changes in the insured's condition since 2000. (AR 1828). Dr. Shiener opined that the information was basically consistent with the information he had in August 2000, that there was no information that would lead him to change his initial opinions provided in August 2000, and that he continued to be of the opinion that Plaintiff "was not suffering from an acute psychiatric illness that causes him to be disabled from working as a physician." (AR 1829). Defendant denied Plaintiff's claim for disability benefits by letter dated October 21, 2003. (AR 1837).

Plaintiff appealed the denial and submitted additional evidence from another psychiatrist, Dr. Crain. Dr. Crain diagnosed Plaintiff with Panic Disorder without

Agoraphobia and Dysthymic Disorder (Chronic Depression). He opined that Plaintiff was "impaired not only as a physician, but for most work outside of the field," and that Plaintiff meets the definition of total disability for his profession as a physician." (AR 1893).

Defendant forwarded Dr. Crain's report to Dr. Shiener and asked whether the new information altered his previous opinion concerning Plaintiff's case. Dr. Shiener responded that it did not. Plaintiff's file was then reviewed by Defendant's appeal physician, Dr. Keith Caruso. Dr. Caruso concluded that there was "a dearth of objective evidence to support claims that Dr. Soltysiak was severely impaired by depressive or anxious symptoms." (AR 1954). Defendant denied Plaintiff's appeal due to "a lack of documentation to support the presence of impairment dating from January 2002, forward." (AR 1954).

It is the denial of Plaintiff's May 2003 claim for disability benefits from June 2002 forward that is the subject of this action.

## II.

In the prior action Judge Quist determined that the policy at issue gave Defendant sufficient discretion such that any decision by Defendant should be reviewed under the arbitrary and capricious standard. Plaintiff does not disagree with Judge Quist's reasoning. However, Plaintiff contends that in this case Defendant's decision is not entitled to deference because Defendant failed to make a determination on Plaintiff's disability claim within the time frame outlined under the ERISA regulations.

ERISA regulations require a plan administrator to make benefit determinations within 60 days, or, if there are special circumstances, within 120 days. 29 C.F.R. § 2560.503-1(i)(1)(i).

Plaintiff filed his claim in May 2003. His claim was denied on October 21, 2003, and a final decision on his appeal was made on December 22, 2004. Plaintiff clearly did not receive a final decision within the prescribed time period.

A majority of circuits have held that absent substantial compliance with the deadlines outlined in the ERISA regulations, *de novo* review applies because the insurance company's inaction is not a valid exercise of discretion. *Nichols v. Prudential Ins. Co. of America*, 406 F.3d 98, 109 (2d Cir. 2005) (citing *Jebian v. Hewlett-Packard Co. Employee Benefits Organ. Income Protections Plan*, 349 F.3d 1098, 1106-07 (9th Cir. 2003); *Gilbertson v. Allied Signal, Inc.*, 328 F.3d 625, 632-33 (10th Cir. 2003); *Gritzer v. CBS. Inc.*, 275 F.3d 291, 295 (3d Cir. 2002)).

In *Daniel v. Eaton Corp.*, 839 F.2d 263 (6th Cir. 1988), the Sixth Circuit held that "the standard of review is no different whether the appeal is actually denied or is deemed denied." *Id.* at 267. Although the Sixth Circuit observed in a subsequent case that "there is undeniable logic in the view that a plan administrator should forfeit deferential review by failing to exercise its discretion in a timely manner," the court was not required to decide in that case whether the plan administrator's untimely denial should trigger a less deferential standard of review. *Univ. Hosp. of Cleveland v. Emerson Elec. Co.*, 202 F.3d 839, 846 n.4

(6th Cir. 2000). Other circuits have also rejected the application of a *de novo* standard merely because the determination was not timely made. *See*, *e.g.*, *McGarrah v. Hartford Life Ins. Co.*, 234 F.3d 1026, 1031 (8th Cir. 2000) ("the mere presence of a procedural irregularity is not enough to strip a plan administrator of the deferential standard of review."); *Wertheim v. Hartford Life Ins. Co.*, 268 F. Supp. 2d 643, 664 (E.D. Va. 2003) ("The majority's holding in *Jebian* is unpersuasive. Instead, it is Judge Tashima's dissent in *Jebian* that has it right: 'To apply the non-deferential, *de novo* standard of review solely because of a procedural irregularity is an extreme measure,' warranted neither by the facts nor the settled law of ERISA.").

It appears that *Daniel* is still the controlling Sixth Circuit law. Accordingly, this Court is required to apply the arbitrary and capricious standard of review despite the untimeliness of Defendant's decision in this case.

The arbitrary and capricious standard is "extremely deferential" and is "the least demanding form of judicial review." *McDonald v. Western-Southern Life Ins. Co.*, 347 F.3d 161, 172 (6th Cir. 2003). Under this standard a benefit determination is upheld if it is "rational in light of the plan's provisions," *Univ. Hosps. of Cleveland*, 202 F.3d at 846 (quoting *Yeager v. Reliance Standard Life Ins. Co.*, 88 F.3d 376, 381 (6th Cir. 1996)), or if it is "the result of a deliberate, principled reasoning process" and "supported by substantial evidence." *Glenn v. MetLife*, — F.3d —, 2006 WL 2519293 *5 (6th Cir. Sept. 1, 2006) (quoting *Baker v. United Mine Workers of Am. Health & Ret. Funds*, 929 F.2d 1140, 1144

(6th Cir. 1991)). Although the review is deferential, it is no mere formality. *Id.* The court must still review "the quality and quantity of the medical evidence and the opinions on both sides of the issues." *Id.* (quoting *McDonald*, 347 F.3d at 172).

### III.

In order to be eligible for benefits under Defendant's policy, Plaintiff had to show that he was totally disabled. "Total disability" under the policy means that because of injury or sickness Plaintiff is "unable to perform the important duties" of his occupation and that he is under the regular care of a physician. (AR 1950-51).

Plaintiff submitted evidence from his treating physician that he was totally disabled. Defendant did not conduct an independent medical examination of Plaintiff in 2003. Instead, it submitted the new evidence to Dr. Shiener and Dr. Caruso for a file review.

There is nothing inherently objectionable about a file review by a qualified physician in the context of a benefits determination. *Calvert v. Firstar Finance, Inc.*, 409 F.3d 286 (6th Cir. 2005). Nevertheless, "the failure to conduct an independent medical examination "may, in some cases, raise questions about the thoroughness and accuracy of the benefits determination." *Evans v. UNUM Provident Corp.*, 434 F.3d 866, 877 (6th Cir. 2006) (quoting *Calvert*, 409 F.3d at 295 & 296). That appears to be the case here.

In conjunction with his May 2003 claim for disability benefits Plaintiff presented new evidence from his treating psychiatrist, Dr. Swabash. Dr. Swabash reported in a letter dated May 7, 2003, that Plaintiff had "deteriorated over the course of the past year to the point

where he is clearly unable to function competently as a medical doctor." (AR 1806). Specifically, Dr. Swabash noted that:

> Dr. Soltysiak presents with ongoing sleep disturbances, multiple somatic and physical problems with related feelings of helplessness, hopelessness, worthlessness, uselessness, as well as impatience and anhedonia, social isolation, perfectionism, and ongoing tendency to negatively self-assess. He now wrestles with suicidal thoughts fairly consistently. He is plagued by a sense of guilt, shame, failure and loss related to his inability to function as a physician. He is pathologically indecisive and doubtful, experiences an exceedingly high degree of frustration and a sense that he is not in control of his life. He continues to grapple with excessive levels of anxiety and dysphoria, and is deeply pessimistic about his life and future in general.

(AR 1806). Dr. Swabash concluded that Plaintiff was "substantially impaired by chronic depression and anxiety" and "completely unable to handle the pressure and responsibility of practicing medicine." *Id.* Dr. Swabash noted that Plaintiff was currently on Lexapro, Clonazepam, and Zanax, and that previous trials of Desipramine and high doses of Sertraline had been discontinued due to suboptimal results. *Id.*

Although Dr. Swabash's letter did not outline Plaintiff's physical problems, his office notes reveal that Plaintiff's physical symptoms included fainting, inability to sleep, irritable bowel syndrome, and gastroesophageal reflux disease. (AR 1712, 1716, 1717, 1806). In his Physician's Questionnaire Dr. Swabash diagnosed Plaintiff with recurrent severe major depression, anxiety disorder not otherwise specified (NOS), and personality disorder NOS. (AR 1698).

Upon review of Dr. Swabash's Physician's Questionnaire and medical records, Dr. Shiener concluded, in a rather cursory fashion, that the additional information did not change his prior opinion:

> there is no additional information that would lead me to change my initial opinions provided to you in my August 2000 information. I continue to express the opinion expressed in that document concluding that Dr. Solysiak was not suffering from an acute psychiatric illness that causes him to be disabled from working as a physician.

(AR 1829). Dr. Shiener stated that the information provided was basically consistent with the information he reviewed in 2000. Dr. Shiener also noted that Plaintiff's suicidal ideation was without intent, and that Dr. Swabash's description of anhedonia [inability to feel pleasure] was inconsistent with evidence in the Plaintiff's medical records that he did in fact experience fluctuations in mood and the ability to experience pleasure in his social and loving relationships.

Under ERISA there is no mandatory deference accorded to treating physicians. *Evans*, 434 F.3d at 877. Nevertheless, plan administrators "may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician." *Id*. (quoting *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003)).

Despite the treating physician's report of a deterioration in Plaintiff's condition, fairly consistent suicidal ideation, "exceedingly high" frustration, and "excessive levels" of anxiety and dysphoria [feelings of unease], and despite the lack of any contrary medical evidence, Dr. Shiener concluded that the updated medicals showed basically no change in Plaintiff's

condition from 2000 when Dr. Shiener examined him. Dr. Shiener's refusal to credit Dr. Swabash's medical opinion that Plaintiff's condition had worsened and that he was disabled was arbitrary. Dr. Shiener provided no substantial grounds for rejecting Dr. Swabash's medical opinions. He criticized Dr. Swabash's use of the term "anhedonia" merely because there were occasions when the term did not fit. Dr. Shiener discounted Plaintiff's suicidal ideation because it was without intent, but ignored Dr. Swabash's information that the suicidal ideation had increased to the point that Plaintiff "now wrestles with suicidal thoughts fairly consistently."

For purposes of his administrative appeal, Plaintiff submitted an evaluation from Dr. Crain, another psychiatrist, who conducted a psychiatric examination of Plaintiff in February 2004. Dr. Crain reported that Plaintiff's condition had worsened since January 2002. (AR 1884). He noted that in the past three months Plaintiff had seven nearly complete syncopal episodes, that he had severe headaches, neck and lower back pain, irritable bowel syndrome with diarrhea, and gastric ulcers that are aggravated by his stress. (AR 1889). He reported that Plaintiff's physical symptoms have increased and that the intervals between panic/anxiety and depression episodes are much shorter. (AR 1892-93). Moreover, they are now triggered by events of everyday life, not just the requirements of working in the medical field. Dr. Crain noted that Plaintiff had been treating for 10 years with a psychiatrist, with no significant beneficial result. Rather, his condition has deteriorated and he is now impaired

not only as a physician, but for most work outside of the field. Dr. Crain concluded that Plaintiff meets the definition of total disability for his profession as a physician. (AR 1893).

Defendanat forwarded Dr. Crain's psychiatric report to Dr. Shiener and asked him to advise "if this new information alters your previous opinion concerning Dr. Solysiak's case." (AR 1905). Dr. Shiener disagreed with Dr. Crain's finding of total disability in part because Dr. Crain's conclusion was based upon Plaintiff's subjective description of incidents, and in part because Plaintiff had aggressively pursued his disability claim. (AR 1928). Dr. Shiener found "no evidence that describes any qualitative change in Dr. Soltysiak's condition." (AR 1928). He surmised that Plaintiff might be escalating in his complaints and stating his complaints in stronger terms, and that in light of the 2002 finding by Judge Quist, Dr. Swabash might be more reluctant to report positive findings. (AR 1929).

> I remain firm in my conclusion that Dr. Solysiak suffers from a chronic mild form of depression that does not interfere with his ability to go to work. He has limited motivation to work as a physician and is spending an inordinate amount of energy pursuing a disability claim. His pursuit of this disability claim in such an aggressive manner is also inconsistent with a complaint or report of severe chronic and disabling depression.

(AR 1929).

Dr. Shiener improperly relied on Plaintiff's aggressive pursuit of his disability claim as evidence of his ability to work as a doctor. Courts are quick to reject a suggestion that a vigorous pursuit of a disability claim would argue against disability. *McDonald*, 347 F. 3d at 172 n.13 (6th Cir. 2003).

10

Moreover, Dr. Shiener improperly discredited both Plaintiff and his physician. The Sixth Circuit held that the file review conducted in *Calvert* was inadequate in part because the physician made credibility determinations concerning the patient's subjective complaints without the benefit of a physical examination. *Id.* at 296. Similarly, in *Smith v. Continental Cas. Co.*, 450 F.3d 253 (6th Cir. 2006), the Sixth Circuit held that a doctor's file review was inadequate because he made credibility determinations concerning the applicant's subjective complaints of pain without obtaining an independent medical examination to evaluate that pain. *Id.* at 263-64.

Dr. Shiener's file review was inadequate for the same reason. He suspected that Plaintiff might be exaggerating his complaints and that his treating doctor might not be accurately reporting positive findings. He made these credibility determinations without the benefit of a physical examination. Dr. Shiener's animosity toward Plaintiff for pursuing his disability claim clearly colored his ability to rationally evaluate the opinions of Dr. Swabash and Dr. Crain. Dr. Shiener's insistence that Plaintiff's condition remained the same as it was in 2000 when he examined him, despite evidence that Plaintiff's condition had deteriorated, is not supported by substantial evidence.

Defendant also submitted Plaintiff's medical records for review by its own in-house psychiatrist, Dr. Keith A. Caruso. (AR 1940). Dr. Caruso found a lack of objective evidence to support Plaintiff's claim that he was severely impaired by depressive or anxious symptoms. (AR 1946). Dr. Caruso found it difficult to understand why Plaintiff would have resisted

11

recommended psychotherapy, why he would have skipped scheduled appointments, and why he would continue to see Dr. Swabash if his condition had in fact worsened. (AR 1944-46). Dr. Caruso stated that doctors had "consistently suggested" that Plaintiff magnified his symptoms. (AR 1946). Dr. Caruso also found it noteworthy that Plaintiff was unable to describe any physical symptoms associated with his "panic attacks," without prompting. *Id.*

Dr. Caruso's assertion that doctors "consistently suggested" that Plaintiff magnified his symptoms is not supported by the record. Neither Dr. Swabash nor Dr. Crain suggested that Plaintiff was less than credible. Moreover, included within Dr. Crain's notes is evidence that "Dr. Bloom did not identify any factors that suggested a lack of motivation to work or pursuit of disability for a purpose of secondary gain," (AR 1887), and that Dr. Cusher, although concerned about secondary gain issues, was "hesitant to say that the insured was purposely exaggerating."

Dr. Caruso did not identify what he relied on to support his assertion that Plaintiff could not describe his physical symptoms associated with panic attacks without prompting. Neither Dr. Swabash nor Dr. Crain made any such finding, and Dr. Caruso never met with Plaintiff himself.

Defendant's review of Plaintiff's May 2003 disability claim was arbitrary and capricious. Defendant's reviewing doctors rejected the opinions of Plaintiff's physicians without any up-to-date medical evidence to refute their findings. They made credibility determinations without conducting an independent medical examination. They did not

consider how Plaintiff's low self-esteem, depression, panic attacks and anxiety would affect his ability to work with demanding patients, other physicians, and other stresses of his occupation as a physician. Neither did they consider how Plaintiff's medications would affect his ability to practice medicine. *See Smith*, 450 F.3d at 264-65.

The Court concludes that Defendant's denial of Plaintiff's claim was not based on substantial evidence. The review was cursory, conclusive, speculative, and unresponsive to the claims made. The Court will accordingly enter an order requiring Defendant to conduct a full and fair review of Plaintiff's disability claim.


Date:    October 10, 2006           /s/ Robert Holmes Bell
                                    ROBERT HOLMES BELL
                                    CHIEF UNITED STATES DISTRICT JUDGE